ROBERT L. BLAND, Judge.
It appears from an agreed stipulation of facts that about four o'clock A. M. on the 9th day of February, 1945, Neal Riley, age thirty, residence Parkersburg, West Virginia, a yard-helper in the employ of the Baltimore and Ohio Railroad Company, was injured in the Fifth Street Coach Yard, Parkers-burg, West Virginia, while riding a foot stirrup on the rear or southwest corner of baggage and mail car No. 273 of the railroad company; that while the said car was moving at a speed of about three or four miles an hour, and the said Neal Riley was on the southwest corner of the car as aforesaid, his head and body came in contact with a steel girder pier supporting an overhead highway traffic bridge, between Parkersburg, West Virginia and Belpre, Ohio; that there was a close clearance, to wit, 16 inches between the edge of the pier and side of the car and 13 inches between the edge of the pier and the center line of the grab iron at the point where the said Neal Riley was riding when the said accident occurred; that there were no defects in the foot stirrup or grab iron on the baggage and mail car which might have contributed to the accident; that Neal *177 Riley had been in the employ of the Railroad Company for about five or six months prior to the date of the accident, and had assisted in the switching of cars at that point on two prior occasions; that both of said prior trips were made during darkness; that there are lights, with shades, suspended from poles on goose-neck brackets, in the Fifth Street Coach Yard; that these lights are spaced approximately 50 feet distant from each other, which said lights were burning at the time of the accident, and afforded a certain amount of illumination; that the said Neal Riley sustained a contusion of the right hip, right flank and left shoulder, contusion and laceration right forehead, temporal region, complete fracture of the right transverse processes of the 1st, 2nd and 3rd lumbar vertebrae, and was admitted to the St. Joseph's hospital, in the city of Parkersburg, West Virginia, on the 9th day of February, 1945, and discharged from that instituion on the 16th day of February, 1945; that the said Neal Riley was unable to return to his usual employment with the railroad company until the 14th day of June, 1945, thereby losing 125 days, computed at $8.54 per day, amounting to $1,067.50; that by agreement bearing date on the 20th day of October, 1914, between the Baltimore and Ohio Railroad Company and the Parkersburg-Ohio Bridge Company, of record in the office of the clerk of the county court of Wood county, West Virginia, in deed book 165, page 255, the railroad company granted to the said bridge company the right to construct and maintain a bridge and the necessary supports therefor over the railroad and property of the railroad company at Fifth street, Parkersburg, West Virginia, upon certain terms and conditions, among which it is provided:
“5. The Bridge Company shall assume and bear and indemnify the Railroad Company against all loss or damage which said Railroad Company or its employees or property may suffer on account of any accident caused by or in any way growing out of the construction, maintenance and operation of said bridge, whether the negligence of the employees of the Railroad Company contributes to said accident or not, and the Bridge Company shall assume and bear and indemnify the Railroad Company against any *178 injury to said bridar caused by tin- operation of trains.
"7. This agreement shall be binding upon and be for the benefit of the pailies hereto, and their sue eessors and assigns, and any railroad company operating over the tracks of the Railroad Company.”
That at the time of the accident baggage a tul mail car No. 27 5-was being operated upon which is known as track No. 1 of the Baltimore and Ohio Railroad Company, Filth Street Coach Yard: that track No. 1 was constructed some time prior to the building of the Fifth street bridge and was in its present location before and at the time of and subsequent to the construction-of the said Fifth street bridge, and the location of said track No. 1 has not been changed since the building of the bridge: that the said bridge described in the agreement set forth in paragraph 3 was constructed by the Parkersburg-Ohio Bridge Company over the tracks and property of the Railroad Company at Fifth street, Parkersburg. West Virginia, and by successive conveyances has now become and is the property of the state of West Virginia, having acquired title to said bridge by deed bearing date on the 3.0th day of June, 1 93 7, executed bv David B. Crawford, et at. of record in the office of the clerk of the county court of Wood county, West Virginia, in deed book 217. page 209: that paragraph No. 4 in said deed provides as follows:
"l'4) All the rights, privileges and franchises granted by The Baltimore and Ohio Railroad Company to the said Parkersburg-Ohio Bridge Company by contract dated October 20, 1914, recorded in Deed Book 165, Page 26 in the office of the Clerk of the County Court of Wood County, West Virginia. which rights, privileges and franchises were, after intermediate conveyances, conveyed by the Parkersburg Community Bridge Company to the said David B. Crawford and John M. Crawford by said deed of May 20, 1937, above referred to.”
That on the 23rd day of March, 1945, and again on the 16th day of April. 1945, le!ters were directed by the railroad *179 company to representatives of the state road commission of the state of West Virginia, who were in charge of the bridge referred to in the agreement in the preceding paragraph, advising them of the accident hereinbefore described, and asking for advice as to the handling of the claim which was then being made by the said Neal Riley; that there was some exchange of correspondence between the railroad company and the office of the attorney general of the state of West Virginia, and the state road commission, with the result that, by letter, bearing date on the fourth day of May, 1945, addressed to Mr. P. C. Garrott, general claim agent, The Baltimore and Ohio Railroad Company, Baltimore, Maryland, signed by Ralph M. Hiner, assistant attorney general of the state of West Virginia, the railroad company was advised that the state road commission could not be bound by the provisions in the said contract as aforesaid, and that the state of West Virginia would not appear in the defense of any action which the said Neal Riley might bring against the railroad company, and that the sta'e w.ould defend any action which might be brought against the state road commission, thereby refusing to comply with the provisions of paragraph 5 thereof; that the said Neal Riley employed George Sheldon, an attorney, practicing in the city of Parkers-burg, West Virginia, for the purpose of filing a claim and, if necessary, the institution of a suit against the railroad company for damages for the injuries sustained by him in the above described accident, and after some negotiations between representatives of the claim department of the railroad company and attorney Sheldon, said claim of the said Neal Riley against the railroad company was settled for the sum of $1850.00. and a full and complete release was signed by the said Neal Riley on the 10th day of July, 1945, releasing the said railroad company and the state road commission of the state of West Virginia from any and all liability for injuries arising out of said accident: that the railroad company is prohibited by the terms and provisions of West Virginia constitution, article 6, section 45, and the judicial decisions of West Vrginia thereunder, from maintaining any action, either at law or in equity, against the state of West Virginia, the state road commissioner *180 of West Virginia, or the state road commission of West Virginia, for the enforcement of said contract or agreement, and therefore is obliged to proceed under chapter 20 of the acts of Legislature of West Virginia, for the year 1941, as found in Michie’s 1943 West Virginia code, section 1143, etc.
Respondent contends that the state, its political subdivisions, agencies, agents or employees are without authority to enter into any contract or agreement imposing responsibility upon the state for the debts or liabilities of any county, city, township, corporation or person, by virtue of article 10, section 6 of the constitution of West Virginia; and that the state road commission was relieved of all liability in the premises when a full and complete release was signed by Neal Riley on June 10, 1945, releasing the railroad company and the state road commission of West Virginia from any and all liability for injuries arising out of the accident in question.
The railroad company contends that the contract dated October 20, 1914, which it entered into with the Parkersburg-Ohio Bridge Company, which, by its terms, is binding upon the parties thereto, their successors and assigns, should be honored by the state of West Virginia. It argues that said contract could be enforced in the courts of the state against any owner of the bridge except the state of West Virginia, which cannot be made defendant in a state court. The railroad company asks why should not the state in equity and good conscience discharge and pay an obligation solemnly entered into in writing on the 20th day of October, 1914, between it and the Parkers-burg-Ohio Bridge Company, which obligation was binding upon the successors and assigns of the respective parties, when in fact the state of West Virginia is the successor and assign of the Parkersburg-Ohio Bridge Company. It argues that any person or corporation except a sovereign commonwealth that had become the successor and assign of the Parkersburg-Ohio Bridge Company would be bound by the agreement and would be obligated to honor its terms. It takes the position that when the agreement in question was entered into in 1914 the railroad company had a free, open and unobstructed passageway over *181 and along its various tracks in the Fifth Street Coach Yards in Parkersburg, West Virginia. It had a right to require this right of way to remain free, open and unobstructed. It had paid a valuable consideration for the privilege of laying its tracks in this Coach Yard. The Parkersburg-Ohio Bridge Company had no right to interfere in any way with the operation of locomotives and cars over and along these tracks. Realizing the exclusive right of the railroad to enjoy the free, open and unobstructed use of these tracks and further realizing that no bridge could be built over those tracks without first obtaining the written approval and consent of the railroad company, the agreement in question was negotiated and signed by the respective parties thereto. In the event the railroad company had seen fit to refuse to enter into this contract with the bridge company and the bridge had not been constructed over the railroad’s tracks, this accident would not have happened.
It is manifest that the contract in question could not be enforced against the state in a court of law so long as it should see fit to rely upon its constitutional immunity. However, if the state were suable it would plainly follow that by reason of the conditions of the contract the claimant would be entitled to recover a verdict. The fact that Neal Riley executed a release of his claim to the road commission and to the railroad company could not militate against the right of the latter to be subrogated to the extent of the amount which it was obliged to pay in settlement of the claim. We are of opinion in view of the showing of the record that the settlement made by the railroad company with the claimant was fair, just and reasonable.
The contract, which is the basis of the claim, was not entered into by and between the railroad company and the road commission. Sections 5 and 7 contained in that contract would of course be objectionable and not allowed to be inserted in an agreement between the railroad company and the state. The contract was in existence when the road commission acquired title to the bridge property. The contract containing the sections referred to was of record in the office of the county court of Wood county where it could have been seen and inspected *182 by the road commission or any representative of the state. When the road commission took title to the bridge property it acquired such title subject in all respects to the terms, covenants and conditions contained in the original agreement. It would seem that the state of West Virginia would not want to repudiate an obligation which it voluntarily assumed. The railroad company divested itself of a valuable right when it permitted the bridge to be constructed over its tracks. The road commission is now in possession of the bridge, enjoying its benefits, and should not, in equity and good conscience, be permitted, under the circumstances existing in this case, to be relieved from complying with its obligations on account of its immunity from suit. The Legislature may, we think, if it sees fit so to do, assume responsibility for the payment of the claim in the instant case. In other words, the state as a sovereign commonwealth should, in equity and good conscience, discharge and pay an obligation for which it is both morally and legally liable.
An award is accordingly made in favor of claimant, The Baltimore and Ohio Railroad Company, for the sum of eighteen hundred and fifty dollars ($1850.00).